182 F.3d 893 (Fed. Cir. 1999)
 DALE E. ONEY, Plaintiff-Appellant,
v.
DARRELL RATLIFF, Defendant-Appellee,
and JUNGLE RAGS, INC., WALT DISNEY COMPANY, WALT DISNEY CONSUMER PRODUCTS, WALT DISNEY WORLD COMPANY, and THE DISNEY STORE, INC., Defendants.
 98-1591
 United States Court of Appeals for the Federal Circuit
 DECIDED: August 12, 1999
 
 Appealed from: United States District Court for the Eastern District of Michigan Judge John Corbett O'MearaJohn E. Carlson, Howard & Howard Attorneys, P.C., of Bloomfield Hills, Michigan, argued for plaintiff-appellant. Of counsel was Raymond E. Scott.
 Robert E. Lyon, Lyon & Lyon LLP, of Los Angeles, California, argued for defendant-appellee. With him on the brief was Arnold E. Sklar.
 Before NEWMAN, LOURIE, and KELLY,* Circuit Judges.
 KELLY, Circuit Judge.
 
 
 1
 The Honorable Paul J. Kelly, Jr., Circuit Judge, United States Court of Appeals for the Tenth Circuit, sitting by designation.
 
 
 2
 Dale E. Oney appeals from the final judgment pursuant to Fed. R. Civ. P. 54(b) of the United States District Court for the Eastern District of Michigan in Oney v. Ratliff, No. 95-CV-73410. The district court granted summary judgment in favor of Darrell Ratliff and Jungle Rags, Inc. (Apr. 27, 1997) and denied Mr. Oney's motion to revise its summary judgment order (Aug. 26, 1998). The district court held that the patent issued to Mr. Oney and entitled "Novelty Shirt" was invalid as anticipated, see 35 U.S.C. § 102(a) & (g), and denied Mr. Oney's request on reconsideration to declare the patent valid. We reverse and remand.
 
 BACKGROUND
 
 3
 Mr. Oney filed an application for a Canadian patent on September 22, 1989. On April 23, 1990, he filed an application for a United States patent claiming priority from the Canadian patent application. The patented novelty shirt has a freely-hanging flap attached to the upper part of the shirt. A design (or information) on the outside of the flap, together with a design on the shirt above the flap form a first picture. Designs beneath the flap on the shirt and underside of the flap form a second picture. The United States application issued as U.S. Patent No. 4,999,848 on March 19, 1991.
 
 
 4
 On August 23, 1995, Mr. Oney filed this infringement suit based upon T-shirts, designed by Mr. Ratliff, that have a cartoon picture of an animal with a free flap forming the animal's mouth. The flap can be raised and lowered to simulate the animal opening and closing its mouth. The animal with the closed mouth is a first picture and the animal with an open mouth, including the underside of the flap, forms the second picture that is a sequel to the first picture. For ease of description, we refer to these shirts as "animal flap T-shirts."
 
 
 5
 On March 17, 1997, Mr. Ratliff moved for summary judgment contending that the patent was invalid because he invented and sold his animal flap T-shirts prior to Mr. Oney's priority date of September 22, 1989. In granting summary judgment, the district court relied upon affidavits from Mr. Ratliff's sample maker (Eva Manning) and silkscreen printer (Michael Bertini) that they had fabricated Mr. Ratliff's animal flap T-shirts based upon his designs in spring and summer of 1989. The court also relied upon affidavits from two California retailers (Yvonne Mithrush and Dale Reza) stating they had purchased animal flap T-shirts from Mr. Ratliff during the summer of 1989. The retailers based their recollections largely upon Mr. Ratliff's summary sales records. Mr. Ratliff also provided copies of sales ledgers purporting to confirm sales of the animal flap T-shirts prior to September 1989.
 
 
 6
 Subsequently, after Mr. Ratliff's tardy compliance with an order to compel, Mr. Oney obtained the source documents (invoices) underlying Mr. Ratliff's information about 1989 sales of animal flap T-shirts. Rather than confirming the 1989 sales (and customer purchases) of animal flap T-shirts, the source documents confirm that regular T-shirts were sold. In light of this obvious problem, one of the retailers (Dale Reza) retracted her affidavit and in another stated that she did not recall purchasing the animal flap T-shirts in 1989. The other retailer (Yvonne Mithrush) stated that, although she was mistaken about the content of the sales records, she had an independent recollection of purchasing the animal flap T-shirts prior to the marriage of Mr. Ratliff and his wife (September 2, 1989). The district court denied Mr. Oney's motion to revise its summary judgment order, concluding that the remaining evidence warranted summary judgment.
 
 DISCUSSION
 
 7
 Our review of a district court's grant of summary judgment is de novo. See General Elec. Co. v. Nintendo Co., Ltd., --F.3d--, 50 USPQ2d 1910, 1912 (Fed. Cir. 1999). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An important function of summary judgment is to eliminate factually unsupported claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A nonmovant may not rest upon his pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The summary judgment material relied upon by the nonmovant is viewed in the light most favorable to him with the benefit of reasonable inferences. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 595-98 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The summary judgment material must contain probative evidence that would allow a trier of fact to find in the nonmovant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).
 
 
 8
 A patent is presumed valid. See 35 U.S.C. § 282. Notwithstanding, a patent is invalid if the claimed invention was "known or used by others in this country . . . before the invention thereof by the applicant for patent," id. § 102(a), or "was made in this country by another who had not abandoned, suppressed or concealed it" prior to the applicant's invention, id. § 102(g). One who challenges a patent's validity must prove invalidity by clear and convincing evidence. See Finnigan Corp. v. International Trade Comm'n, --F.3d--, 50 USPQ2d 1001, 1008 (Fed. Cir. 1999). "Invalidity based upon lack of novelty (often called 'anticipation') requires that the same invention, including each element and limitation of the claims, was known or used by others before it was invented by the patentee." Hoover Group, Inc. v. Custom Metalcraft, Inc., 66 F.3d 299, 302 (Fed. Cir. 1995).
 
 
 9
 Mr. Ratliff has the burden of persuasion in demonstrating invalidity. See Zenith Elec. Corp. v. Exec, Inc., --F.3d--, 51 USPQ2d 1337, 1345 (Fed. Cir. 1999). Although anticipation is a question of fact, it still may be decided on summary judgment if the record reveals no genuine dispute of material fact. See General Elec. Co., --F.3d--, 50 USPQ2d at 1912. "Summary judgment in favor of the party with the burden of persuasion, however, is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Hunt v. Cromartie, 119 S. Ct. 1545, 1552 (1999). Stated another way, summary judgment is inappropriate if a trier of fact applying the clear and convincing standard could find for either party. Anderson, 477 U.S. at 255.
 
 
 10
 Mr. Oney relies upon Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 47 USPQ2d 1363 (Fed. Cir. 1998), and contends that the oral testimony relied upon by Mr. Ratliff to establish prior invention and sale is uncorroborated and cannot suffice for clear and convincing evidence. Mr. Oney further argues that even if the corroboration requirement was met, contrary evidence may preclude a finding of clear and convincing evidence. Mr. Ratliff responds that the independent recollections of the sample maker, silkscreen printer and one retailer are sufficient, but corroborative documentary support exists in the form of a ficititious business name statement for "Jungle Rags" filed August 28, 1989. According to Mr. Ratliff, the animal flap T-shirts were sold under the Jungle Rags name, after first being sold under the "Natives Sportswear" name. Mr. Ratliff also relies upon a sample and design drawings, all of which are undated.
 
 
 11
 Mr. Ratliff's declarations indicate that the animal flap T-shirts were invented in the spring of 1989 and sold beginning in June 1989. Plainly, both of these critical facts are controverted, despite Mr. Ratliff's varying explanations. Cf. Cleveland v. Policy Mgmt Sys. Corp., 119 S. Ct. 1597, 1603-04 (1999) (party cannot create genuine issue of fact by contradicting previous sworn statement merely to avoid summary judgment). The source documents for Mr. Ratliff's 1989 sales suggest that regular T-shirts were sold in 1989, not the animal flap T-shirts. The source documents further suggest that the animal flap T-shirts were sold beginning in September and October 1990. Mr. Ratliff counters that the bookeeper's records of "test market" sales of the animal flap T-shirts cannot be located, and that the 1990 sales records reflect a subsequent "nationwide" sales launch.
 
 
 12
 Other disputed issues of fact exist. Each of the six copyright registrations for the associated animal designs indicates that creation was completed in 1990. Although Mr. Ratliff argued below that these registrations were completed by an employee lacking expertise in the process of registering copyrights, that does not defeat their probative value on summary judgment. While it is true that the copyright registrations cover designs, rather than the invention itself, Mr. Ratliff's version of events is that the designs and the invention were concurrent.
 
 
 13
 Mr. Oney did not depose Mr. Ratliff or his declarants. He was not required to, although, as we discuss below, depositions might have assisted him. He was required to designate specific facts tending to show a genuine issue of material fact and support those facts with evidence other than the pleadings. See Celotex, 477 U.S. at 324. This he has done.
 
 
 14
 Although we reject the district court's conclusion that Mr. Oney failed to produce significantly probative countervailing evidence concerning the date of Mr. Ratliff's invention, we cannot conclude at this point that Mr. Oney must prevail for want of corroboration. The district court declined to apply the Woodland Trust factors[1] to address corroboration because it determined that Mr. Oney failed to provide countervailing evidence and reasoned that Woodland Trust was limited to its unique facts. We have rejected the former proposition and conclude that the Woodand Trust factors are pertinent. The uncorroborated oral testimony of Mr. Ratliff, as the inventor, and his close associates would be insufficient to prove invalidity. See Finnigan Corp., --F.3d--, 51 USPQ2d at 1009-12; Thompson, S.A. v. Quixote Corp., 166 F.3d 1172, 1175, 49 USPQ2d 1530, 1532 (Fed. Cir.), cert. denied, 119 S. Ct. 2395 (1999); Woodland Trust, 148 F.3d at 1371, 47 USPQ2d at 1366.
 
 
 15
 Mr. Oney argues that he is entitled to a declaration that the patent is valid on the grounds that the only evidence supporting the 1989 dates is the oral testimony of Mr. Ratliff, two close relatives (Manning and Bertini) and a longtime friend (Mithrush). Mr. Oney did not depose these declarants and his only support for the characterization of these relationships is merely responsive argument made by opposing counsel. Given the oral and documentary evidence in the case, this does not constitute "significantly probative" evidence that would allow us to apply the Woodland Trust factors based upon the totality of the circumstances, see Finnigan Corp., --F.3d--, 51 USPQ2d at 1011-12, including "the relationship between the corroborating witness and the alleged prior user" and "the interest of the corroborating witness in the subject matter of the suit," Woodland Trust, 148 F.3d at 1371, 47 USPQ2d at 1366. The record will benefit from further factual development; the case must be remanded for trial.
 
 
 16
 REVERSED and REMANDED.
 
 
 
 NOTES:
 
 
 [1]
 The factors are compiled from In re Reuter, 670 F.2d 1015, 1021 n.9, 210 USPQ 249, 255 n.9 (CCPA 1981).