**COMBINED SYSTEMS, INC., Plaintiff,**

v.

**DEFENSE TECHNOLOGY CORP. OF AMERICA and Federal Laboratories, Inc., Defendants.**

**No. 01 CIV 78333.**

United States District Court, S.D. New York.

Nov. 18, 2002.

Lance C. Venable, Michael F. Campillo, Ellis, Venable & Busam LLP, Phoenix, AZ, for Plaintiff.

Adam M. Cohen, Kane Kessler, P.C., New York, Donald L. Otto, Jay R. Campbell, Renner, Otto, Boisselle & Sklar LLP, Cleveland, OH, for Defendants.

## OPINION AND ORDER

COTE, District Judge.

The parties in this action are competitors. They manufacture and sell, primarily to law enforcement authorities, a shotgun shell designed to have a low likelihood of killing a human being upon impact. On August 21, 2001 Combined Systems, Inc. ("CSI") filed this action alleging that the "Drag Stabilized Bean Bag Round," or "23DS" projectile, manufactured and sold by defendants Defense Technology Corporation of America and Federal Laboratories, Inc., (collectively "DTCA") infringes its U.S. patent no. 6,202,562 ("562 patent"). The defendants have filed a counterclaim seeking a declaratory judgement invalidating the 562 patent.

The defendants have filed motions for summary judgment on both the infringement claim and their counterclaim. For the following reasons, the motion on the infringement claim is granted, and the motion on the declaratory judgment counterclaim for patent invalidity is denied.

## BACKGROUND

The 562 patent contains one claim. Pursuant to *Markman v. Westview Instruments*, 52 F.3d 967, 979 (Fed.Cir.1995)(en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), the elements of the claim were construed in an opinion issued on April 19, 2002 ("April 19 Opinion"), which is incorporated herein.

The 562 patent describes a method for "shaping" an "anti-personnel projectile launched from a 12 gauge shotgun shell" having a "low lethality consequence." The projectile essentially consists of a tubular sock-like object filled with lead shot. The open end at the rear of the projectile is tied off to seal the lead shot inside the projectile. The projectile body is thus divided into two sections by the tie—a forward portion, the "compart-

ment," containing lead shot and a rear free-flowing portion, the "tail." The projectile is loaded into a 12 gauge shotgun shell and launched by igniting the propellant at the base of the shell. The projectile is designed to expand upon impact to minimize its lethality. The 23DS projectile, the allegedly infringing product, manufactured by DCTA, is also a low lethality anti-personnel projectile. It is also constructed from a tubular product that has been filled with lead shot and tied off to create a compartment containing the shot and an open end. Its tail, however, is composed of four separate pieces.

The method of preparing the projectile for insertion into the shotgun shell and the manner of insertion are of particular relevance to the instant motions. The claim for the 562 patent describes the step of "shaping" the projectile in preparation for its insertion into the shell as: "forming folds in said tubular sock-like projectile body immediately forward of said rear opening thereof." As exemplified by the figures in the patent illustration, these folds are formed in the tail of the projectile. The next step, according to the patent, is "inserting said formed folds of said tubular sock-like projectile body into said projectile compartment front opening."

As construed in the April 19 Opinion, the "forming folds" clause does not refer to "any gathers in the material that incidentally occur when a string is pulled to close the compartment"; rather, the ordinary meaning of the word "fold" combined with the gerund "folding" "requires the deliberate and systemic creation of folds." The April 19 Opinion also construed the claim as meaning that "the folds referenced in the claim are formed prior to— not during—insertion in the empty shotgun shell."

In support of their motion for summary judgment on the infringement claim, the defendants advance two principal argu-

ments. First, they contend that DTCA does not deliberately and systemically form folds in the tail of the 23DS projectile as required by the claim. And, second, to the extent "folds" are created when the 23DS projectile is inserted into a shell, these folds are formed incident to, and not prior to, its insertion into the shell. Defendants also raise a prosecution history estoppel argument. In support of their motion for summary judgment on their counterclaim, defendants contend that plaintiff's 562 patent is invalid due to plaintiff's violation of the one year on-sale bar.

## DISCUSSION

Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of his pleadings. Rule 56(e), Fed.R.Civ.P.; *accord Am. Airlines, Inc. v. United States,* 204 F.3d 1103, 1108, 1112 (Fed.Cir.2000). Thus, in determining whether to grant summary judgment, this Court must (1) determine whether a genuine factual dispute exists based on evidence in the record; and (2) determine, based on the substantive law at issue, whether the fact in dispute is mate-

rial. Even though patent infringement is a fact-intensive inquiry, summary judgment is as appropriate in a patent case as in other cases. *See C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.,* 911 F.2d 670, 672 (Fed.Cir.1990).

### 1. *Infringement of 562 Patent*

■ An infringement analysis is a two-step process in which the scope of the claim is first determined and then the accused device is compared to the properly construed claim to determine whether all of the claim elements are present either literally or by a substantial equivalent. *Kemco Sales, Inc. v. Control Papers Co.,* 208 F.3d 1352, 1359–60 (Fed.Cir.2000) (citation omitted). *See also Bowers v. Baystate Techs.,* 302 F.3d 1334, 1351 (Fed.Cir. 2002). The comparison of the claim with the accused device is a question of fact. *Bai v. L & L Wings,* 160 F.3d 1350, 1353 (Fed.Cir.1998).

■ Under the theory of literal infringement, the patentee may prove infringement by demonstrating that the accused device contains each and every limitation of the claim. *Bowers,* 302 F.3d at 1351. Under the doctrine of equivalents, the patentee may prove infringement by establishing that the accused device contains each limitation of the claim or its equivalent. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 39 n. 8, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); *accord Bell Atlantic Network Serv., Inc. v. Covad Communications Group, Inc.,* 262 F.3d 1258, 1279–80 (Fed.Cir.2001). The plaintiff relies on both doctrines to prove infringement in this case.

### a. Literal Infringement

■ Defendants argue that the 23DS projectile does not literally infringe the 562 patent, since the manufacturing process for the 23DS projectile does not include the systemic and deliberate forming of folds prior to the projectile's insertion into the shotgun shell. To raise an issue of fact in this regard, the plaintiff relies exclusively on a videotape of defendants' manufacturing process. The plaintiff contends that the tape shows that one of two technicians, a female, systemically forms folds in the projectile's tail prior to insertion into the shell.

The plaintiff's evidence is insufficient to raise a question of fact that would prevent a grant of summary judgment. The manufacturing process documented in the video does not show the systemic and deliberate forming of folds nor does it show the forming of any such folds prior to the projectile's insertion into the shell. One technician, a male, does not form folds at any point in the process of preparing it for insertion or inserting it into the shell. To prepare the projectile for insertion, he grasps the compartment of the projectile with his right hand and uses his left hand to straighten the tails with a twisting motion. He then grasps the entire projectile with his right hand, holding it near the tips of the tails with the compartment resting against the inside of his palm. He holds the shell in his left hand and initiates the insertion of the projectile into the shell by pushing the projectile, tails first, with his right hand into the shell.

The female technician follows a similar method for preparing the projectile for insertion into the shell, but her execution of the method produces slightly different results. In preparing the shell for insertion, she too grasps the compartment of the projectile in her right and uses her left hand to straighten the tails with a twisting motion. She is not, however, as vigorous in straightening the tails with the twisting motion. Consequently, the tails of the projectiles she has prepared for insertion are not as straight prior to insertion as the

tails of the projectiles prepared by the male technician.

Her method of inserting the projectile into the shell diverges more substantially from the method used by the male technician. As she initiates the process of inserting the projectile into the shell she does not always hold the tails near their tips. When she holds the tails at a point closer to the compartment, the tails bend over her finger as she pushes them into the shell with the index finger of her right hand. She also occasionally uses her left index finger in conjunction with her right index finger to push the tails into the shell. The use of her left index finger to push the tails into the shell also has the effect of bending the tails over her finger as they are pushed down into the shell.

This evidence is insufficient to raise a question of fact that the process for manufacturing the 23DS projectile infringes the 562 patent. First, to the extent any "folds [1]" are ever formed by the female technician, they are created as part of the process of insertion and not prior to it. As construed in the April 19 Opinion, the "forming folds" element of the claim does not refer to folds "created through disorganized stuffing movements when the projectile is inserted into the empty shell."

Second, it is undisputed that the male technician does not form any folds in the projectile. To the contrary, he straightens the tails of the projectile prior to inserting them into the shell. The contrasting techniques between the two technicians for inserting the projectile into the shells underscore that folds are not formed in any

systemic or deliberate manner. Indeed, even the female technician does not follow the same process each time she inserts the projectile into the shell.

In sum, the plaintiff has not presented evidence to raise a question of fact that the defendants' method of manufacturing the 23DS projectile literally infringes the 562 patent. The plaintiff has not presented evidence that the defendants systemically form folds in the projectile or that they do so prior to the insertion of the projectile into the shotgun shell.

b. Doctrine of Equivalents

Plaintiff argues in the alternative that the defendants infringe the 562 patent under the doctrine of equivalents. Invoking the "function/way/result" test articulated in *Graver Tank & Mfg. Co., Inc. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), plaintiff asserts that the defendants' process infringes the 562 patent because the accused process performs substantially the same function as the patented process in substantially the same way to achieve substantially the same result. First, plaintiff contends that the means of insertion of the 23DS projectile into its shell is accomplished in substantially the same way as the claimed invention. Plaintiff claims that the equivalence is evidenced by the fact that after insertion of each projectile, the "respective tails have come to rest in such a way that the bulks [sic] of the tails rest directly upon the base of the shell, while at the same time resting against the head of the projectile." The plaintiff next argues that

---

1. As explained in the April 19 Opinion, the ordinary meaning of "fold" is "[t]o bend over or double up so that one part lies on another part." *Am. Heritage Dictionary* 681 (4th ed.2000). Given that the rear portion of the 23DS projectile is cut into four individual tails, it is not clear that the notion of "folding" or "folds" is even applicable to the

accused process. Moreover, even when the female technician bends the tails over her finger during insertion, the tails do not lie on themselves. It is more accurate to describe the tails of the projectiles as bunched together, rather than folded, by the process of inserting them into the shotgun shell.

the similarity of the "flight characteristics" or "flight profile" of the two projectiles demonstrates that the accused process serves substantially the same function and achieves substantially the same result as the patented process.

Plaintiff's argument fails for two reasons. First, the inadequacy of plaintiff's evidence prevents it from establishing equivalence to a degree necessary to survive summary judgment. Simply making conclusory statements about the similarity of the ultimate resting position of the projectiles in the shell without proffering any evidence of how this demonstrates equivalence is not sufficient to defeat a motion for summary judgment. *See Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed.Cir.1999). Plaintiff's unsubstantiated claim about the similarity in flight characteristics or profile of the two projectiles is equally unavailing.[2] *Id.*

■ Second, the doctrine of equivalents is not a "license to ignore claim limitations." *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 398 (Fed.Cir.1994). There can be no infringement under the doctrine of equivalents if even one element of a claim or its equivalent is not present in the accused process. *Warner–Jenkinson*, 520 U.S. at 29, 39 n. 8, 117 S.Ct. 1040; *Bell Atlantic*, 262 F.3d at 1279–80.

As defendants correctly point out, plaintiff's equivalence argument ignores at least two elements of the claim: the deliberate and systematic forming of folds in the projectile and the forming of these folds prior to the insertion of the projectile into the shotgun shell. While plaintiff asserts that the range of equivalents for these two elements should be "broad enough" for it to be able to establish equivalence based on similar flight characteristics alone, the doctrine of equivalents does not allow "such broad play as to effectively eliminate [an] element in its entirety." *Warner*, 520 U.S. at 29, 117 S.Ct. 1040. The "broad" definition of equivalence proffered by the plaintiff cannot defeat summary judgment, because it vitiates elements of the claim. *Id.* at 39 n. 8, 117 S.Ct. 1040.

Because plaintiff has not established a genuine issue of material fact regarding infringement under either a theory of literal infringement or the doctrine of equivalents, the defendants' motion for summary judgment is granted. Given this conclusion, it is unnecessary to reach defendants' argument based on prosecution history estoppel.

### 2. *Validity of 562 Patent*

■ Defendants argue that the 562 patent is invalid because it violates the one-year "on-sale" bar. A patent is invalid if the invention it describes was on sale more than one year prior to the date of the application for the patent. 35 U.S.C. § 102(b). There is a statutory presumption that an issued patent is valid. 35 U.S.C. § 282. A challenger to a patent's validity must prove invalidity by clear and

---

**2.** The only evidence plaintiff submits to support its contention of similar flight characteristics or profile is an unauthenticated compact disc which is described as containing flight profile test results for the 23DS and CSI projectiles. Apart from the issue of authentication, the video clips on the disc are of little use without expert testimony to describe what they mean. While plaintiff claims that "at trial" it "will present expert testimony" that *confirms* the similarity of the flight characteristics between its projectile and the 23DS, the

party opposing a motion for summary judgment is required to establish genuine issues of fact through the submission of admissible evidence. Rule 56(e), Fed.R.Civ.P.; *accord Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). *See also Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1563 (Fed.Cir.1988) (The Federal Circuit defers to the discernible law of the respective forum for determination of procedural issues not unique to patent law.). The plaintiff has not offered such evidence.

convincing evidence, and summary judgment is not appropriate if a trier of fact applying that standard could find for either party. *Oney v. Ratliff,* 182 F.3d 893, 895 (Fed.Cir.1999).

 The on-sale bar rule requires proof by clear and convincing evidence that the invention of the patent was the subject of a "commercial offer for sale" and that the invention was ready for patenting. *Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). For the on-sale bar to apply, the product sold must have included each of the limitations of the claim. *Dana Corp. v. Am. Axle & Mfg., Inc.,* 279 F.3d 1372, 1375–76 (Fed.Cir.2002) (citation omitted).

Defendants' argument for the invalidity of the 562 patent rests primarily on a sales record indicating that plaintiff sold and shipped five rounds of a projectile, "model no. 2581", on October 25, 1998—a few weeks before the on-sale bar date of November 5, 1998.[3] In a product specification sheet, the plaintiff's sister company, Combined Tactical Systems, Inc., identifies "model no. 2581" as covered by the 562 patent. The defendants contend that this product specification sheet, in conjunction with the sales record, proves that the plaintiff sold a projectile manufactured by the patented method before the on-sale bar date.

The fact that the products sold on October· 25, 1998 possessed the same model number as the model number of the products later covered by the patent does not by itself prove that the product sold included every limitation of the claim. *See Tec Air, Inc. v. Denso Manufacturing Michigan Inc.,* 192 F.3d 1353, 1359 (Fed. Cir.1999). For example, defendants have adduced no evidence that the plaintiff and its sister companies change the model number with each new development in the evolution of the projectile. It is not possible, therefore, based upon the model number alone, to establish clearly and convincingly that the product sold on October 25, 1998 was manufactured by the method identified in the claim.

Moreover, plaintiff has offered evidence that the projectiles sold in October 1998 were not manufactured by the process identified in the 562 patent. Plaintiff relies on the deposition testimony of co-inventor Michael Brunn, who testified that the inventors did not even discover the method for loading the projectile claimed in the patent until early 1999.[4] Defendants assert that the Federal Circuit has a "long-standing" rule requiring that the testimony of an inventor be corroborated. They argue that Brunn's testimony is uncorroborated and urge its rejection.

The corroboration rule arose from concern over the danger of invalidating a patent based solely on oral testimony. *Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728, 740 (Fed.Cir.2002)(discussing *The Barbed Wire Patent,* 143 U.S. 75, 12 S.Ct. 443, 36 L.Ed. 154 (1892)). It has evolved, particularly in the context of attempts to prove prior public use and priority of invention, into a multi-factored test for evaluating oral statements, a test that is tempered by a "rule of reason." *Id.* at 741. "[A]ll pertinent evidence" is reviewed to determine the credibility of an inventor's story, *Brown v. Barbacid,* 276 F.3d 1327, 1335 (Fed.Cir.2002) (citation omitted), including circumstantial evidence. *Loral Fairchild Corp. v. Matsushita Electrical Industrial Company, Ltd.,* 266 F.3d 1358, 1364 (Fed.Cir.2001). Documentary or physical evidence created contemporaneously with the inventive process provides the "most reliable" corroboration of the

---

**3.** On November 5, 1999, CSI filed the patent application for the 562 patent.

**4.** *See infra* note 5.

inventor's testimony. *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1218 (Fed.Cir.2002) (citation omitted). Corroboration is required for the testimony of any witness, regardless of the level of the witness's interest in the litigation, when the "testimony alone is asserted to invalidate a patent." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed.Cir.1999).

The plaintiff has provided no authority for extending the corroboration rule to a patentee defending against a claim of invalidity based on the on-sale bar. This lack of authority is not surprising, since the rule was originally designed to determine whether a party attacking a patent had presented clear and convincing evidence. *Id.* at 1370.

Even if a patentee is required to present corroboration of an inventor's testimony in the defense of a patent, however, the plaintiff has offered sufficient corroboration to defeat summary judgment. *See Tec Air*, 192 F.3d at 1359 (testimony on behalf of patentee sufficiently corroborated to prevent entry of judgment as a matter of law). Brunn's testimony that the inventors did not discover the patented method of inserting the projectile until early 1999 is substantially corroborated by his October 8, 1998 letter to one of the plaintiff's suppliers. In this letter, Brunn indicates that,

as of the time of the letter, the projectile was still exhibiting penetration that was "too high" during testing. Brunn also wrote that the inventors were still experimenting with "different loads and powder charges" in an attempt to address these penetration problems. Brunn testified that the patented method of folding the tail of the projectile prior to insertion and inserting the projectile tail first into the shell resolved the problem of excessive penetration in the targets.[5] The experimentation as of October 8, 1998 with different loading methods to address the issue of excessive penetration corroborates Brunn's testimony that the patented method for addressing this problem was not discovered until after the on-sale bar date of November 8, 1998. Because the plaintiff has established, through the corroborated testimony of the co-inventor, the existence of genuine issues of material fact, the defendants' motion for summary judgment on their patent invalidity counterclaim is denied.

*CONCLUSION*

For the reasons stated above, the defendants' motion for summary judgment is granted on the infringement claim and denied on the patent invalidity counterclaim. A scheduling order governing further pro-

---

5. Co-inventor Michael Brunn testified:

Q: And it's also my understanding that you then determined that the tail portion should not be pulled over the shot compartment prior to insertion into the shell; is that correct?
A: Yes.
Q: And why did you make that change in the manufacturing process?
A: To address a phenomenon that we became aware of.
Q: Which was?
A: Small impact areas of the clay target which were excessively deep.
* * * * * *
Q: So what change did you make to alleviate that problem?

A: We loaded it over the tail end first and discovered that it gave a blunt impact where the tail did not deploy.
Q: When did you make that change in the manufacturing process?
A: I believe it was sometime in the beginning of '99.

ceedings in this case is issued with this Opinion.

SO ORDERED.