BROOKHILL–WILK 1, LLC,
Plaintiff–Appellant,

v.

INTUITIVE SURGICAL, INC.,
Defendant–Appellee.

No. 02–1145.

United States Court of Appeals,
Federal Circuit.

Decided June 27, 2003.

Rehearing En Banc Denied
June 27, 2003.

Peter L. Berger, Levisohn, Lerner, Berger & Langsam, LLP, of New York, New York, filed a response to the petition for plaintiff-appellant. With him on the response was Marilyn Neiman.

David M. Barkan, Fish & Richardson, P.C., of Redwood City, California, filed a combined petition for panel rehearing and rehearing en banc for defendant-appellee. With him on the petition was David M. Shaw, Vice President, Legal Affairs & Corporate Counsel, Intuitive Surgical, Inc., of Sunnydale, California. Of counsel were Todd G. Miller and Dina Grinshpun, Fish & Richardson, P.C., of San Diego, California; and Frank E. Scherkenbach, Fish & Richardson, P.C., of Boston, Massachusetts.

Before SCHALL, BRYSON, and LINN, Circuit Judges.

## ORDER

A combined petition for panel rehearing and rehearing en banc was filed by Intuitive Surgical, Inc. ("Intuitive") and a response thereto was invited by the court and filed by Brookhill–Wilk 1, LLC ("Brookhill"). Thereafter, these filings were referred to the merits panel that heard the appeal.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The Petition for Panel Rehearing is granted for the limited purpose of clarifying the court's claim construction and the issues remaining for consideration on remand, and

(2) The previous opinion of the court in this appeal, issued on April 11, 2003 and reported at 326 F.3d 1215, is withdrawn and the opinion attached to this order is substituted in its place.

(3) In all other respects, the Petition for Panel Rehearing is denied.

## OPINION

LINN, Circuit Judge.

Brookhill–Wilk 1, LLC ("Brookhill") appeals from the judgment of the United States District Court for the Southern District of New York dismissing its complaint after deciding, on motion for summary judgment, that Intuitive Surgical, Inc. ("Intuitive") had not infringed the claims of U.S. Patent No. 5,217,003 ("the '003 patent"). *Brookhill–Wilk 1, LLC v. Intuitive Surgical, Inc.,* No. 00–Civil–6599 (S.D.N.Y. Nov. 14, 2001). We conclude that the district court erred in construing the limitation "remote location." Accordingly, we reverse and remand for further proceedings consistent with this opinion.

A petition for panel rehearing was filed by Intuitive and granted by the panel for the limited purpose of clarifying the court's claim construction and the issues remaining for consideration on remand. This opinion replaces the court's original opinion in response to the petition for rehearing. The disposition of the appeal is unchanged.

## BACKGROUND

Brookhill is the owner of the '003 patent directed to systems and methods for performing robotic surgery. The systems and methods use robotic surgical tools and telecommunication links to permit a surgeon to operate from a "remote location beyond a range of direct manual contact" with the patient. '003 patent, col. 4, ll. 17–18. This differs from conventional surgery, where "the surgeon is always present in the operating room to manipulate the surgical instruments." *Id.* at col. 1, ll. 29–32. Among the stated "objects" of the invention are "reduc[ing] surgical costs" and "facilitat[ing] the performance of operations by surgeons from all over the world." *Id.* at col. 1, ll. 41–48.

Claim 10 of the '003 patent is representative and recites, with the terms at issue underlined:

10. A surgical system, comprising:

an endoscopic instrument;

camera means on said endoscopic instrument for obtaining video images of internal body tissues inside a patient's body via said endoscopic instrument;

transmission means operatively connected to said camera means for transmitting, over an electromagnetic signaling link to *a remote location beyond a range of direct manual contact* with said patient's body and said endoscopic instrument, a video signal encoding said video image;

receiver means for receiving actuator control signals *from said remote location* via said electromagnetic signaling link;

a surgical instrument insertable into the patient's body and movable relative to the patient's body and said endoscopic instrument; and

robot actuator means operatively connected to said surgical instrument and said receiver means for actuating said surgical instrument in response to the actuator control signals received by said receiver means *from said remote location.*

(emphases added) *Id.* at col. 4, l.67—col. 5, l.20.

The application that issued as the '003 patent was filed in 1991 and issued on June 8, 1993. A continuation-in-part ("CIP") application was filed on June 7, 1993, claiming priority to the application that issued as the '003 patent. This CIP application issued on November 29, 1994, as U.S. Patent No. 5,368,015 ("the '015 patent").

In September 2000, Brookhill filed suit alleging that Intuitive's *da Vinci* robotic surgical system infringed both the '003 and '015 patents. Intuitive denied infringement and filed counterclaims alleging invalidity of both patents. In July 2001, the parties stipulated to the dismissal of the claims and counterclaims relating to the '015 patent. Intuitive sought a construction of the term "remote location," asserting that it meant "a location outside the operating room." In opposition, Brookhill argued that the term "remote location" is not so limited and encompasses any location of the surgeon that is beyond an arm's length from the patient. The parties agreed that the surgeon in Intuitive's *da Vinci* system is located in the same operating room as the patient and that if the district court adopted the claim construction urged by Intuitive, the district court would be required to find non-infringement as a matter of law.

In its claim construction analysis, the district court first attempted to ascertain the ordinary and customary meaning of the term "remote location" by consulting a dictionary and other reference material. The district court determined that the dictionary definitions did not rule out either Brookhill's or Intuitive's proposed construction and thus proceeded to examine the written description and prosecution history of the '003 patent. Specifically, the district court reviewed the objectives and advantages described in the written description and determined that they would not be met unless the surgeon is located beyond the room in which the patient is located. The district court also found that, because only one embodiment was described, the written description necessarily limited the claims to situations in which the surgeon is located outside of the operating room, citing *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 59 USPQ2d 1865 (Fed.Cir.2001), and *Wang Laboratories, Inc. v. America Online, Inc.*, 197 F.3d 1377, 53 USPQ2d 1161 (Fed.Cir. 1999). The district court also held that the prosecution history of the '003 patent required that claim coverage be limited to circumstances in which the patient is not within sight of the surgeon.

Following its analysis, the district court adopted Intuitive's proposed claim construction, determined that a "remote location" was "a location outside the operating room where the patient undergoing surgery is located," granted summary judgment in favor of Intuitive, and dismissed Brookhill's complaint. *Brookhill–Wilk 1, LLC v. Intuitive Surgical, Inc.*, 178 F.Supp.2d 356 (S.D.N.Y. 2001) ("*Order*").[1]

---

1. The district court's initial order stated that the court "need not and do[es] not reach the question of the validity of the '003 patent." *Order* at 26. Because the district court did not enter final judgment on Intuitive's invalidity counterclaim, this Court determined that we lacked jurisdiction over the appeal. *Brookhill–Wilk 1, LLC v. Intuitive Surgical, Inc.*, 51 Fed.Appx. 859 (Fed.Cir.2002). Following a stipulation by the parties, the district court then entered a second order, dismissing Intuitive's counterclaims without prejudice. *Brookhill–Wilk 1, LLC v. Intuitive Surgical, Inc.*, No. 00–Civil–6599 (S.D.N.Y. Oct. 24, 2002). The appeal was reinstated based on this judgment, in accordance with the practice announced in *State Contracting & Engineering Corp. v. Florida*, 258 F.3d 1329, 1333–35, 59 USPQ2d 1498, 1502 (Fed.Cir.2001).

Brookhill now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### A. Standard of Review

██ We review a district court's grant of summary judgment de novo. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323, 63 USPQ2d 1374, 1379 (Fed. Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The grant of summary judgment in this case was predicated on the parties' stipulation of the factual component of the infringement question, leaving only the issue of claim construction for appeal. Claim construction is a question of law that this court reviews de novo. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed. Cir.1998) (en banc).

### B. Analysis

As noted above, the district court interpreted the limitation "remote location" as meaning "a location outside the operating room where the patient undergoing surgery is located." *Order* at 26. Brookhill challenges this interpretation, stating that the plain meaning of the claim term, the patent's written description, the prosecution history, and extrinsic evidence all support a broader reading that does not restrict the surgeon to a location outside of the operating room. Intuitive, on the other hand, argues that the written description and prosecution history foreclose Brookhill's broad interpretation and instead limit the interpretation of "remote location" to a location outside of the operating room. We agree with Brookhill.

### I

██ We begin our claim construction analysis with the words of the claim. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576

(Fed.Cir.1996). "In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention.' 35 U.S.C. § 112, ¶ 2." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331, 59 USPQ2d 1401, 1406 (Fed.Cir.2001). The words used in the claims are examined through the viewing glass of a person skilled in the art. *Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1342, 59 USPQ2d 1385, 1393 (Fed.Cir.2001). In the absence of an express intent to impart a novel meaning to the claim terms, the words are presumed to take on the ordinary and customary meanings attributed to them by those of ordinary skill in the art. *See, e.g., Teleflex*, 299 F.3d at 1325, 63 USPQ2d at 1380. The ordinary and customary meaning of a claim term may be determined by reviewing a variety of sources. Some of these sources include the claims themselves, *see Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357, 52 USPQ2d 1029, 1033 (Fed.Cir.1999); dictionaries and treatises, *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202, 64 USPQ2d 1812, 1818 (Fed. Cir.2002); and the written description, the drawings, and the prosecution history, *see, e.g., DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1324, 57 USPQ2d 1889, 1894 (Fed.Cir.2001).

██ The written description must be examined in every case, because it is relevant not only to aid in the claim construction analysis, but also to determine if the presumption of ordinary and customary meaning is rebutted. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250, 48 USPQ2d 1117, 1122 (Fed. Cir.1998). The presumption will be over-

come where the patentee, acting as his or her own lexicographer, has clearly set forth a definition of the term different from its ordinary and customary meaning. *See In re Paulsen,* 30 F.3d 1475, 1480, 31 USPQ2d 1671, 1674 (Fed.Cir.1994); *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387–88, 21 USPQ2d 1383, 1386 (Fed.Cir.1992). The presumption also will be rebutted if the inventor has disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope. *See Teleflex,* 299 F.3d at 1324, 63 USPQ2d at 1380.

## II

■ At the outset, we note that although the disputed claim language is characterized by both the parties and the district court as "remote location," these words find context in the surrounding phrase "remote location beyond a range of direct manual contact." While certain terms may be at the center of the claim construction debate, the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms. *See Hockerson–Halberstadt, Inc. v. Converse Inc.,* 183 F.3d 1369, 1374, 51 USPQ2d 1518, 1522 (Fed.Cir.1999).

Brookhill argues that the ordinary and customary meaning of the expression "remote location" can be clearly understood from the language of the claims themselves. Brookhill contends that "a remote location beyond a range of direct manual contact" means any location beyond the arm's length of a human. Brookhill further asserts that the written description is consistent with the construction that a remote location simply means beyond arm's reach. Brookhill also argues that the district court, in reaching a narrower construction, erroneously imported limitations from the written description into the claims, both by reading in limitations from

the recited advantages and by misapplying this court's precedents with respect to preferred embodiments. Finally, Brookhill asserts that the district court misapplied the prosecution history as limiting the scope of the claims.

Intuitive contends that the district court's analysis was correct and that the written description and prosecution history of the '003 patent require that the construction of the term "remote location" be limited to "a location outside the operating room where the patient undergoing surgery is located."

## III

■ In considering the ordinary and customary meaning of the disputed terms, the district court consulted a contemporaneous dictionary, which defined "remote" as "separated by intervals greater than usual; far apart ... far removed; not near; far; distant." *Webster's Third New International Dictionary* 1921 (Merriam–Webster 1993) (*"Webster's"*). The district court also consulted a number of unrelated and non-contemporaneous authorities, such as "What is Remote Sensing" at http://www.geog.nau.edu/RemoteSensing (last modified Apr. 8, 1998) and Remote Oregon—City Guide at http://www.scod.com/cities/remote (last modified June 25, 2001). These references are dated well after the '003 patent, which was filed in March 1991 and issued in June 1993. They are not contemporaneous with the patent, do not reflect the meanings that would have been attributed to the words in dispute by persons of ordinary skill in the art as of the grant of the '003 patent, and for those reasons are not considered in our de novo claim construction analysis.

The dictionary entry for "remote," cited by the district court and argued before us by the parties, has several definitions that

all have facial relevance to the claimed invention. *Webster's* at 1921. Brookhill relies on the first definition—"separated by intervals greater than usual." It argues that a surgeon located at any distance beyond arm's length is at an "interval greater than usual," because surgery is traditionally performed by direct manual contact with the patient. Intuitive, on the other hand, relies on the remaining cited definitions—"far apart ... far removed; not near; far; distant." Intuitive argues that these definitions connote long distances, well beyond the arm's length separation asserted by Brookhill. Intuitive thus argues that a "remote" location is at least as far as to be outside of the operating room.

 Both Brookhill's and Intuitive's proposed constructions are in some measure supported by the various definitions provided. While dictionaries and treatises are useful resources in determining the ordinary and customary meaning or meanings of disputed claim terms, the correct meaning of a word or phrase is informed only by considering the surrounding text. This is why consulting dictionary definitions is simply a first step in the claim construction analysis and is another reason why resort must always be made to the surrounding text of the claims in question, the other claims, the written description, and the prosecution history. Our precedent referencing the use of dictionaries should not be read to suggest that abstract dictionary definitions are alone determinative. In construing claim terms, the general meanings gleaned from reference sources, such as dictionaries, must always be compared against the use of the terms in context, and the intrinsic record must always be consulted to identify which of the different possible dictionary meanings is most consistent with the use of the words by the inventor. "Where there are several common meanings for a claim term, the patent disclosure serves to point away from the improper meanings and toward the proper meanings." *Renishaw PLC*, 158 F.3d at 1250, 48 USPQ2d at 1122; *see also Tex. Digital*, 308 F.3d at 1203, 64 USPQ2d at 1819. If more than one dictionary definition is consistent with the use of the words in the intrinsic record, the claim terms may be construed to encompass all consistent meanings. *Tex. Digital*, 308 F.3d at 1203, 64 USPQ2d at 1819. Because multiple, potentially consistent, dictionary definitions exist for the claim terms in question, we turn now to the rest of the intrinsic record for further context and guidance.

IV

The written description explains that in accordance with the invention an endoscopic instrument and a surgical instrument may each be placed within hollow tubes fed through a small incision in the abdominal wall of a patient to the surgical site. '003 patent, col. 2, ll. 37–47. The endoscope transmits a video image to a transmitter that transmits the image over a telecommunications link to a remote receiver. The receiver relays the image to another computer that generates an image of the internal body tissues of the patient on a monitor. *Id.* at col. 3, ll. 7–18. The surgeon then remotely controls the surgical instrument and the endoscope. *Id.* at col. 3, ll. 25–34. The written description sets forth no specific parameters as to the distance between the surgeon and patient, but teaches generally that a surgeon using the disclosed assembly may operate without directly touching the patient, the surgical instruments, or the endoscope—regardless of the extent of the physical separation between the surgeon and the patient.

Intuitive argues that the scope of the claims is limited based on statements made in the Objects of the Invention and Back-

ground sections of the patent, and on the single embodiment disclosed. The Objects of the Invention section of the written description describes the invention as "reduc[ing] surgical costs" and "facilitat[ing] the performance of operations by surgeons from all over the world." *Id.* at col. 1, ll. 39–48. The Background section states that in traditional settings, "the surgeon is always present in the operating room to manipulate the surgical instruments." *Id.* at col. 1, ll. 29–32. The patent, however, does not disavow the use of the invention within an operating room, nor does it specify that the invention is useful only where the surgeon is located at a great distance from the operating room.

■ The patent certainly contemplates that a principal use of the invention is to allow a surgeon to operate at some distance, possibly across the world, from the operating room in which the patient is located. The written description states the advantage of the invention in this context, and the description of the preferred embodiment contemplates a surgeon located outside of the operating room:

> It is to be understood, of course, that surgeons and other personnel are present in the operating room at the time of surgery to oversee and supervise the proper operation of the equipment. These personnel may communicate with the remote surgeon via computers and telecommunications links and/or through other telecommunications or electromagnetic signaling linkages such as the telephone network.

*Id.* at col. 3, ll. 41–48 (internal references omitted). No statement in the written description, however, constitutes a limitation on the scope of the invention. The objective described is merely one of several objectives that can be achieved through the use of the invention; the written description does not suggest that the invention must be used only in a manner to attain that objective. "Advantages described in the body of the specification, if not included in the claims, are not per se limitations to the claimed invention." *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1096, 46 USPQ2d 1257, 1266 (Fed.Cir.1998) (Newman, J., dissenting) (citing *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1574, 40 USPQ2d 1481, 1489 (Fed.Cir.1996); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1432–34, 7 USPQ2d 1129, 1131–32 (Fed.Cir.1988)). The Background merely states the apparent—that traditional surgery is performed by direct manipulation of surgical instruments on patients within the operating room. Stating that the surgeon would always be in the operating room when performing traditional surgery does not foreclose the presence of the surgeon within the operating room when performing remote surgery. The statements from the description of the preferred embodiment are simply that—descriptions of a preferred embodiment that permits surgeons to operate from across the world. Those statements do not indicate that the invention can only be used in such a manner. Absent a clear disclaimer of particular subject matter, the fact that the inventor anticipated that the invention may be used in a particular manner does not limit the scope to that narrow context. *See, e.g., Teleflex,* 299 F.3d at 1328, 63 USPQ2d at 1382–83; *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 809, 62 USPQ2d 1781, 1785 (Fed.Cir. 2002). Where, as here, the written description and prosecution history fail to express a manifest exclusion or restriction limiting the claim term, and where the written description otherwise supports the broader interpretation, "we are constrained to follow the language of the claims," *Teleflex,* 299 F.3d at 1328, 63 USPQ2d at 1382–83, and to give the claim

term its full breadth of ordinary meaning as understood by persons skilled in the relevant art. *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342, 60 USPQ2d 1851, 1854 (Fed.Cir.2001). As such, we construe the term "remote location" to encompass not just locations that are "far apart" or "distant," but also those locations that are merely "separated by intervals greater than usual." *Webster's* at 1921. These locations need not be outside the operating room.

V

The prosecution history also supports our construction. Nothing in the prosecution history attributes patentability to the location of the surgeon outside of the operating room.

To the extent Intuitive relies on the amendment during prosecution in which Brookhill changed the phrase "remote location beyond a range of direct *visual* contact" to "remote location beyond a range of direct *manual* contact," and argues that this amendment somehow requires us to construe the claims narrowly to preserve their validity, we reject that argument for the following reasons.

As originally filed, the application for the '003 patent used the phrase "remote location beyond a range of direct *visual* contact." The patent examiner found this phrase to be indefinite because "the range of direct visual contact may be different for certain operators of the system and this cannot be given weight in the claims." To overcome the indefiniteness rejection, Brookhill replaced the word "visual" with the word "manual," resulting in the issued claims. In support of this change, Brookhill stated that the amended text "means that the remote location is beyond the arm's reach of the patient. Inasmuch as an arm's length is a well understood difference, it is believed that the remote location is sufficiently defined for purposes of the Patent Statute." Brookhill further stated

that "[t]his amendment clarifies that a remote operator who is generating actuator control signals ... is so far from the patient and the endoscopic instrument as to be unable to manipulate the instrument at the patient's side." The examiner subsequently allowed the claims and the patent issued following an examiner's amendment in which references to the "range of direct visual contact" in the specification were revised to recite "range of direct manual contact."

Intuitive asserts that because the original claim scope required that the surgeon be "beyond a range of direct visual contact," the only appropriate scope for the claim is for the surgeon to be outside of the operating room. Intuitive argues that if the surgeon is in the operating room, the surgeon can shift his gaze to see the patient and, thus, would be within the range of direct visual contact. Intuitive thus contends that because the originally claimed invention required the surgeon to be located outside of the operating room, the construction of the amended and allowed claims must be similarly limited.

Intuitive's argument is not persuasive. As discussed above, there is nothing in the written description or original claims that limits the location of the surgeon to a position outside the operating room. In giving the originally filed claims their full breadth, as we must, the location of the surgeon within or outside the operating room is not relevant. Because the scope of the originally filed claims is not as narrow as Intuitive argues, the argument that the scope of the claims as issued should somehow be limited by those claims to exclude locating the surgeon within the operating room is of no avail.

Intuitive argues that if "beyond a range of direct visual contact" did not require the surgeon to be outside of the operating room, but rather encompassed a remote

surgical technique in which the surgeon observes a monitor instead of the patient when operating, the prior art surgeon familiar with the use of a conventional endoscope would also be beyond the range of direct visual contact with the patient. Thus, according to Intuitive, the claim must be construed more narrowly to preserve validity. However, nothing in the prosecution history attributes patentability to the location of the surgeon outside of the operating room. Brookhill merely argued before the Patent Office that the prior art cited against the application failed to disclose or suggest the automatic operation of the surgical instruments in response to actuator control signals and the manipulation of controls from an unspecified remote location.

Intuitive also argues that to adopt Brookhill's construction—that the term "remote location" simply places the surgeon beyond an arm's length from the patient—impermissibly broadens the scope of claim coverage beyond the scope of the originally filed application, citing *Schering Corp. v. Amgen*, 222 F.3d 1347, 55 USPQ2d 1650 (Fed.Cir.2000). The district court declined to address this argument, accepting for purposes of summary judgment Brookhill's contention that the amendment did not add new matter.

Intuitive's reliance on the *Schering* case is misplaced. In *Schering*, the patent application as originally filed included a claim limitation "leukocyte interferon." During the pendency of the patent, the scientific community coined the phrase "IFN-alpha" to refer to a class of compounds encompassing both leukocyte interferons and other compounds. The specific compound identified in the original application—the leukocyte interferon—was designated by those skilled in the art as "IFN–alpha–1." During prosecution, the patentee amended the claims and specification to replace the term "leukocyte interferon" with "IFN-

alpha." *Id.* at 1352, 222 F.3d 1347, 55 USPQ2d at 1654. The patent subsequently issued and was asserted against an infringer. The accused infringer argued that the claim term "IFN-alpha" could not be construed to cover all compounds of this type, but rather, only the "leukocyte interferon"/"IFN–alpha–1" compound disclosed in the originally filed application. The district court concluded that the change of text in the specification constituted new matter in violation of 35 U.S.C. § 132. *Id.* at 1352, 222 F.3d 1347, 55 USPQ2d at 1653.

This court agreed that the patentee was not entitled to assert broad claim coverage of all types of IFN-alpha. But rather than finding a new matter violation, we construed the scope of claim coverage to be consistent with the scope of the term originally used:

> This court does not discern a new matter violation in the substitution of the term "IFN-alpha" for "leukocyte interferon." This court interprets the claim term "IFN-alpha" in light of the patent's written description ... [which] clarifies that [the inventor] may not attempt to broaden his invention to cover polypeptides not discovered at the time of his patent application .... The written description accompanying his new claim language specifies that the amendment merely renames his invention—whatever its scope may have been at the time of application .... The amendment merely substitutes terminology.... As already noted, this court interprets the claim at issue to cover no more than what the specification supported at the time of filing.

*Id.* at 1352–53, 222 F.3d 1347, 55 USPQ2d at 1654.

Unlike *Schering*, Brookhill was not attempting to capture, by amendment, something that was not supported by the original specification. Instead, Brookhill

was merely clarifying, at the examiner's insistence, a supported limitation of the claim. The issue in *Schering*, therefore, is not present in this case. Brookhill, in changing the claim language from beyond visual contact to beyond manual contact provided a definition for the term "remote location" that applied to both contexts—"it means that the remote location is beyond the arm's reach of the patient." This definition, provided outside the context of litigation, and supported by the written description and original claims, is entirely consistent with the construction now urged by Brookhill.

As discussed above, the written description sets forth no specific parameters as to the distance between the surgeon and patient, but teaches generally that a surgeon using the disclosed assembly may operate without directly touching the patient, the surgical instruments, or the endoscope—regardless of the extent of the physical separation between the surgeon and the patient. The term "remote location" thus must be given the full breadth of its ordinary and customary meaning, and includes all locations that are "far apart," "distant," or "greater than usual." The overall limitation "remote location beyond a range of direct manual contact" as used in the claims must be construed to encompass all locations where the surgeon is beyond direct physical contact with a patient, including locations within the operating room. The expression "beyond a range of direct manual contact" is no broader than and adds little more than emphasis to the fully supported term "remote location." The court thus "interprets the claim at issue to cover no more than what the specification supported at the time of filing." *Id.* This does not present a new matter issue for consideration on remand.

## VI

The plain language of the claims themselves, the written description, and the prosecution history fully support the determined meaning of "a remote location beyond a range of direct manual contact." Accordingly, we need not and do not consider the extrinsic evidence present in the record. *See Vitronics*, 90 F.3d at 1582, 39 USPQ2d at 1577 ("[If] an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term ... it is improper to rely on extrinsic evidence.").

## CONCLUSION

Because the district court's construction of "remote location" was erroneous and because the district court's grant of summary judgment in favor of Intuitive was predicated entirely on this erroneous construction, we reverse the judgment and remand the case to the district court for further proceedings consistent with this opinion.

## COSTS

Costs to plaintiff-appellant.

*REVERSED AND REMANDED.*